[No. 33899-4-I.    Division One.    May 2, 1994.]

THE STATE OF WASHINGTON, *Petitioner*, v. ROBERT DEAN HUNSAKER, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Michele Ann Hauptman and Thomas McBride, Deputies,* for petitioner.

*Nancy Horgan* of *The Defender Association,* for respondent.

PER CURIAM. — A commissioner granted the State's motion for discretionary review of a superior court order prohibiting a State's witness from testifying at trial. The matter was referred to a panel of judges for a decision on the merits. We reverse the decision of the Superior Court and remand.

## FACTS

The State alleges that on October 6, 1993, Robert Hunsaker offered a 7-year-old boy quarters to play video games at a video arcade. As the boy played the games, Hunsaker rubbed his genitals against the boy's hand. The boy does not remember whether Hunsaker had an erection at the time. After the boy finished the video game, Hunsaker asked the boy to return to the arcade to meet him later that night. The boy explained that he would have to get permission from his babysitter. The boy told his babysitter, Melonie Rowe, about the incident and asked her to deny him permission to return to the arcade. The boy then told Hunsaker that he could not return.

When the boy's father arrived at the arcade, Rowe explained what had happened. As Hunsaker left in his van, Rowe and the boy's father obtained the license number.

Hunsaker was charged with child molestation in the first degree and arraigned on October 29, 1993. Trial was set for December 27 with an expiration date of December 28.

On or about December 10, the prosecutor decided to call M.S. as a witness. Hunsaker was convicted in 1992 of molesting M.S. in a manner similar to the present offense. Hunsaker befriended 11-year-old M.S. at a video arcade and provided him money. As M.S. played the arcade games, Hunsaker repeatedly rubbed his genitals against the back of M.S.'s hand. Hunsaker ultimately grabbed M.S.'s hand and placed it down his pants, forcing the boy to fondle Hunsaker's penis.

A detective located M.S. and served him with a subpoena on December 21. The same day, the prosecutor left defense counsel a voice mail message advising her of the new witness. Defense counsel was a member of the Public Defender's Association (PDA).

Speedy trial was extended until December 30 due to illness of defense counsel. On December 30, Hunsaker appeared in the presiding department and asked the court to exclude the testimony of M.S. Hunsaker stated that M.S. had recently been represented in a juvenile matter by Rick Lichtenstadter of PDA. Hunsaker argued that Rules of Pro-

fessional Conduct 1.9 and 1.10 would preclude his present counsel from continuing to represent him if M.S. were permitted to testify. Because an appointment of new counsel would necessitate a further extension of speedy trial over Hunsaker's objection, Hunsaker argued that the appropriate remedy was to exclude M.S.'s testimony.

The State responded that it acted diligently in locating and subpoenaing M.S. and that exclusion of his testimony was not the proper remedy. Furthermore, the State maintained that Hunsaker had failed to present any evidence of an actual conflict of interest that would warrant disqualification under the Rules of Professional Conduct.

The presiding judge found that a conflict of interest existed and that "based on the options now available to the court and taking into account the unjustified delay in advising defense counsel of this witness, the testimony of [M.S.] is excluded in the trial of this case."[1]

The case was assigned to a trial court. In the interim, the State filed a motion for discretionary review in this court which was granted.

### DECISION

Rule of Professional Conduct (RPC)[2] 1.9 states:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except [under circumstances not germane to the case at bar].

■■ If an individual in a law firm is precluded by RPC 1.9 from representing a particular client, then all the mem-

---

[1]The Superior Court did not rule on the question of whether M.S.'s testimony would otherwise be admissible under the Rules of Evidence. The issue has not been briefed or argued before this court and we express no opinion on it.

[2]The RPC became effective on September 1, 1985.

bers of the law firm are likewise prohibited from representing the client under RPC 1.10. *State v. Hatfield*, 51 Wn. App. 408, 412, 754 P.2d 136 (1988). According to the "terminology" section of the RPC, public defender agencies qualify as "law firms" for purposes of application of the rules. RPC Terminology; *see also State v. Stenger*, 111 Wn.2d 516, 522, 760 P.2d 357 (1988).

Hunsaker successfully argued below that, because M.S. was previously represented by another member of PDA, calling M.S. as a witness creates a conflict of interest under RPC 1.9 and 1.10 and his present attorney was required to withdraw. This argument is based on the presumption that M.S.'s former attorney would be required to withdraw if he represented Hunsaker at trial. Resolution of this question requires an analysis of the meaning of "substantially related" as set forth in RPC 1.9(a).

■ The determination of whether an attorney's continued representation violates the Rules of Professional Conduct is a question of law and is reviewed de novo. *Teja v. Saran*, 68 Wn. App. 793, 796, 846 P.2d 1375, *review denied*, 122 Wn.2d 1008 (1993). The law in Washington on the subject of what constitutes "substantially related" for purposes of RPC 1.9(a) is sparse. In *Intercapital Corp. v. Intercapital Corp.*, 41 Wn. App. 9, 700 P.2d 1213, *review denied*, 104 Wn.2d 1015 (1985) the element of substantial relationship was not disputed. *Intercapital Corp.*, 41 Wn. App. at 11. The subsequent cases of *State v. Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988), *State v. Early*, 70 Wn. App. 452, 853 P.2d 964 (1993), *review denied*, 123 Wn.2d 1004 (1994), *Teja v. Saran*, 68 Wn. App. 793, 846 P.2d 1375, *review denied*, 122 Wn.2d 1008 (1993) and *State v. Greco*, 57 Wn. App. 196, 787 P.2d 940, *review denied*, 114 Wn.2d 1027 (1990) similarly offer little guidance in defining the phrase.[3] However, case law from other jurisdictions provides a sufficient framework for deciding the issue at bar.

---

[3]Two earlier cases decided under the Canons of Professional Ethics likewise fail to be of assistance. *See Kurbitz v. Kurbitz*, 77 Wn.2d 943, 468 P.2d 673 (1970); *National Bank of Commerce v. Fountain*, 9 Wn. App. 727, 514 P.2d 194 (1973).

RPC 1.9(a) codifies the common law rule announced in the seminal conflict of interest decision, *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp. 265 (S.D.N.Y. 1953).[4] The *T.C. Theatre Corp.* court stated:

[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into the nature and extent.

*T.C. Theatre Corp.*, 113 F. Supp. at 268.

■■ It has been said that most of the federal circuit courts have adopted the "substantially related" test as articulated in *T.C. Theatre Corp. Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 730 (E.D. Va. 1990). Nonetheless, two distinct versions of the "substantially related" test have emerged. *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1533 (D. Kan. 1992); *In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 628-29 (S.D. Ohio 1984).

The first version, adopted by a majority of the courts, compares the "matters" or "factual contexts" of the prior and present representations. The Tenth Circuit has followed this majority rule. " ' "Substantiality is present if the factual contexts of the two representations are similar or related." ' " *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985) (quoting *Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir.1983) (quoting *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir.1980))). The second version, adopted by the Second Circuit, imposes a higher standard. A substantial relationship must be "patently clear" and requires disqualification "only when the issues involved have been 'identical' or 'essentially the same.' " *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 741 (2nd Cir.1978) (quoting in part *NCK Organization, Ltd. v. Bregman*, 542 F.2d 128, 135-36 (2nd Cir.1976) (concurring opinion)). The difference between these two versions is with what is examined in the two representations — factual contexts versus issues — and with what is expected from the

---

[4]Although the substantial relationship test is typically attributed to *T.C. Theatre Corp.*, the test can be traced to earlier cases. Charles W. Wolfram, *Modern Legal Ethics* § 7.4.3, at 368 (1986).

movant's proof — a similarity or relatedness versus "a patently clear" relationship.

*Koch*, 798 F. Supp. at 1533. *See also* Charles W. Wolfram, *Modern Legal Ethics* § 7.4.3, at 370 (1986) (wherein these two versions of the substantial relationship test have been referred to as the "cause-of-action" approach and the "particularistic" approach).

If the patently clear test is applied, the court only considers whether the issues involved are identical or essentially the same. Application of the factual contexts test is more painstaking. Wolfram § 7.4.3, at 371. The court must consider whether the factual contexts of the two representations are similar or related. As the court in *Koch* explained:

> [a] commonality of legal claims or issues is not required. At a functional level, the inquiry is whether "the attorneys were trying to acquire information vitally related to the subject matter of the pending litigation." To accomplish this inquiry, the court must be able to reconstruct the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client. What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.

(Footnote and citations omitted.) *Koch*, 798 F. Supp. at 1536.

In *Modern Legal Ethics*, Professor Wolfram describes the applicable analysis as a 3-stage inquiry.

> First, the court reconstructs the scope of the facts involved in the former representation and projects the scope of the facts that will be involved in the second representation. Second, the court assumes that the lawyer obtained confidential client information about all facts within the scope of the former representation. Third, the court then determines whether any factual matter in the former representation is so similar to any material factual matter in the latter representation that a lawyer would consider it useful in advancing the interests of the client in the latter representation.

(Footnotes omitted.) Wolfram § 7.4.3, at 370.

Although not expressly stated, our Supreme Court appears to have utilized the factual context analysis in *State v. Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988). In *Stenger*, the court considered whether the Clark County Prosecuting Attorney's office should be disqualified from prosecuting Stenger on a charge of aggravated murder in the first degree because the elected Clark County prosecutor had previously represented Stenger on misdemeanor assault and taking a motor vehicle charges. *State v. Stenger*, 111 Wn.2d at 518. The court held that the entire office should be disqualified.

The court reasoned that

[u]nder the facts of this case, and based on the foregoing rules, the prosecuting attorney would not have been disqualified from prosecuting the murder in the first degree charge against the defendant since that charge by itself is unrelated to the accused's previous crimes concerning which the prosecuting attorney represented him. Since the offense charged here is *aggravated* murder in the first degree, where the death penalty is sought, however, and the previous case handled by the prosecuting attorney as counsel for the defendant is thereby closely interwoven with it, the prosecuting attorney is disqualified from acting. This is because the death penalty is the ultimate punishment and, before the prosecuting attorney may ask imposition of the death penalty, the prosecuting attorney must have reason to believe that there are not sufficient mitigating circumstances to merit leniency. The factual information the prosecuting attorney obtained from the accused by virtue of the prosecuting attorney's previous legal representation of the accused, including information about the defendant's background and earlier criminal and antisocial conduct, is information closely interwoven with the prosecuting attorney's exercise of discretion in seeking the death penalty in the present case. In short, privileged information obtained by the prosecuting attorney when he was the defendant's counsel in the previous case could well work to the accused's disadvantage in this case where the death penalty is sought.

(Footnotes omitted.) *State v. Stenger*, 111 Wn.2d at 521-22.

We believe that the factual context analysis is consistent with the comment to RPC 1.9[5] which states:

---

[5]The authorities are split as to which test is most consistent with the intent of RPC 1.9(a)(1). In *Kaselaan & D'Angelo Assocs., Inc. v. D'Angelo*, 144 F.R.D. 235 (D.N.J. 1992), the federal court noted that the "more narrow interpretation of 'substantially related'" was inconsistent with New Jersey state law and "is unnecessarily restrictive when compared to the plain language of RPC 1.9(a)(1)".

> The scope of a "matter" for purposes of this rule may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Model Rules of Professional Conduct Rule 1.9 cmt., at 38 (1989). This court has noted that while the commentary to the rules has not been formally adopted in this state, the commentary is instructive in exploring the underlying policy of the rules. *Teja v. Saran*, 68 Wn. App. at 798 n.4.

Application of the factual context analysis in the case at bar reveals that the record is insufficient to establish that PDA's prior representation of M.S. and the current prosecution of Hunsaker are substantially related matters. The record below fails to set forth the nature of M.S.'s conviction or the underlying facts. In his response to the State's motion for discretionary review, Hunsaker indicates that M.S. was convicted of custodial assault "which presupposes that he was in custody for some other reason". Based upon this limited information, the representation of M.S. and the prosecution of Hunsaker appear to be totally unrelated. Accordingly, disqualification under RPC 1.9(a) is unwarranted on this record.[6] However, that determination does not end the inquiry.

---

*Kaselaan*, 144 F.R.D. at 243. However, another commentator has noted that the commentary to RPC 1.9(a) suggests that the more restrictive "patently clear" test should be applied. Steven H. Goldberg, *The Former Client's Disqualification Gambit: A Bad Move in Pursuit of an Ethical Anomaly*, 72 Minn. L. Rev. 227, 257 (1987); *but see* Castles & Foster, *Conflicts and Lawyer Disqualification*, Nat'l L.J., Feb. 6, 1984, at 16, col. 3 (authors interpret comment as favoring "factual inquiry over the judicial system's prior focus on appearances").

[6]Furthermore, even if the matters were substantially related, the current client's interests must be "materially adverse to the interests of the former client" in order for disqualification to be required under RPC 1.9(a). In *State v. Hatfield*, 51 Wn. App. at 412, the court found that the defendant's interests were adverse to PDA's former client, who was called as a State's witness, because both had an interest in blaming the other for the charged assault. The record in the case at bar fails to demonstrate such adverse interests.

RPC 1.9(a) and (b) are written in the disjunctive and, accordingly, an attorney may be disqualified from representing a client under either provision. While PDA's representation of Hunsaker may not violate RPC 1.9(a), it may nonetheless violate RPC 1.9(b).

RPC 1.9(b) prohibits counsel from "us[ing] confidences or secrets relating to the [prior] representation to the disadvantage of the former client". Hunsaker argues that

> [i]t can fairly be inferred that in the course of his representation of [M.S.], Mr. Lichtenstadter received confidences or secrets from him. . . .
>
> . . . An effective defense of Mr. Hunsaker would require that if he testified, [M.S.] be discredited as a witness. If confidences and secrets were available to defense counsel, e.g. if defense counsel or her associate had represented [M.S.] in the past, such a tactic would involve use of confidences and secrets to [M.S.] disadvantage . . .[.]

The flaw in Hunsaker's argument is that it assumes too much.

In *Teja v. Saran*, 68 Wn. App. at 799, this court recently held that "[t]he plain language of RPC 1.9 indicates actual proof of disclosure of confidential information is not necessary *if the matters are substantially related.*" (Italics ours.) However, if the matters are not substantially related, the court will not presume that confidential information was disclosed requiring disqualification.

In *State v. Anderson*, 42 Wn. App. 659, 713 P.2d 145 (1986),[7] the appellant argued that the trial court erred in refusing to allow his public defender to withdraw based upon an alleged conflict of interest. The asserted conflict arose from the fact that another attorney in the public defender's office had formerly represented one of the prosecution's witnesses. The defendant stated that he intended to cross-examine the witness about his consumption of alcohol on the night of the crime and since the witness was on probation, "a potential for detriment to [the witness] arose because one of the conditions of [the witness's] probation was that he not consume any alcoholic beverages." *State v. Anderson*, 42 Wn. App. at 664.

---

[7]*State v. Anderson, supra*, was not decided under the RPC. However, its reasoning comports with the language of RPC 1.9(b).

The defense interpreted this as presenting a conflict of interest.

The trial court disagreed, finding that the conditions of the witness's probation were public information and that any cross examination of the witness would be based upon facts discovered by defense counsel in the preparation of the defendant's case and not as a result of any prior representation of the witness by the public defender's office. *State v. Anderson*, 42 Wn. App. at 664.

On appeal, this court noted that the witness agreed to testify after being advised of the possible conflict of interest and his privilege against self-incrimination. The court affirmed the trial court's determination that "no actual conflict arose". *State v. Anderson*, 42 Wn. App. at 665.

Similarly, Hunsaker has failed to present any evidence that cross examination of M.S. would involve inquiry into confidences or secrets acquired by Mr. Lichtenstadter. At most, it appears that Hunsaker intends to discredit M.S. based upon his recent juvenile convictions. This information would be available to defense counsel in discovery. Accordingly, Hunsaker has failed to demonstrate that disqualification is necessary pursuant to RPC 1.9(b).

The Superior Court erred in concluding that Hunsaker's counsel was required to withdraw pursuant to RPC 1.9 and 1.10. The court's order excluding the testimony of M.S. because it would necessitate the appointment of new counsel is reversed and the case is remanded for further proceedings consistent with this opinion.[8]

---

[8]Hunsaker has requested that the State's brief be stricken because of the annexation of Hunsaker's judgment and sentence resulting from his molestation of M.S. and the certificate of probable cause in that case. Also, he objects to the State's reference to Hunsaker's "long history of sexual offenses involving children" and to Hunsaker's community placement conditions. None of the above-referenced material is relevant to the issue presently before the court and is stricken. However, the State's brief, minus the stricken appendices, has been accepted to facilitate swift review of the issue presented.