95 P.3d 1248 (2004)
STATE of Washington, Respondent,
v.
Stephen James MacDONALD, Appellant.
No. 29117-7-II.
Court of Appeals of Washington, Division 2.
August 10, 2004.
*1249 Suzan L. Clark, Attorney at Law, Vancouver, WA, David Zuckerman, Attorney at Law, Seattle, WA, for Appellant.
Kimberley Robert Farr, Attorney at Law, Vancouver, WA, for Respondent.
*1250 QUINN-BRINTNALL, C.J.
A jury convicted Stephen James MacDonald of first degree rape (Count I) and second degree rape (Count II) based on two separate incidents involving two separate victims. He appeals, claiming numerous errors.
Because the State failed to disclose material evidence favorable to the accused and improperly commented on MacDonald's right to remain silent, we reverse MacDonald's convictions. We also address MacDonald's arguments regarding the disqualification of his counsel of choice and denial of his severance motions because they may arise again on remand. Thus, we reverse and remand for a separate trial on each count.

FACTS
MacDonald's two convictions stem from two separate incidents. In Count I, MacDonald was charged with raping C.T. in her home on April 26, 2000. C.T. was then chronologically 18 years old and functioned at the upper end of the mentally deficient range. In Count II, MacDonald was charged with the second degree rape of L.P., then 16 years old, on either March 23 or 24, 2000, at Hathaway Elementary School in Clark County.

COUNT I (C.T.)
On April 26, 2000, MacDonald went to C.T.'s home to see her brother, Ruben. While C.T. was in the kitchen cooking a steak, MacDonald approached her from behind and started kissing her. C.T. told MacDonald to stop and pushed him away. MacDonald persisted and eventually used his finger to penetrate her vagina. C.T. repeatedly told MacDonald to stop, but she did not know what else to do. When C.T. pushed MacDonald away, he pulled his pants down and exposed himself.
At that point, C.T.'s brother returned MacDonald's page by calling MacDonald at Ruben's home. While MacDonald was talking to Ruben, C.T. went to her room and shut the door. C.T. thought she had heard MacDonald open the door and leave the trailer. C.T. stayed in her bedroom, but MacDonald opened the bedroom door a short while later. Although C.T. told MacDonald to leave, he pushed her onto her bed and forced her to have sexual intercourse with him.
MacDonald left only when C.T. said that she thought she heard someone coming and told him to leave. MacDonald left, and C.T. locked the front door.
When C.T.'s mother returned home that night, C.T. did not immediately tell her of the incident with MacDonald. But the next day, C.T. noticed that she was bleeding from her vagina. C.T.'s teacher noticed that something was wrong and asked C.T. if she was all right. C.T. told her teacher about MacDonald's raping her and the school notified C.T.'s mother. C.T. went to a hospital, where she received a pelvic examination. The police were also notified and C.T. told detectives about the incident.

COUNT II (L.P.)
According to L.P., she went to Hathaway to pick up her younger brother from after-school care and noticed a red car stopped near the school. MacDonald got out of the car with his adult dog and the car left.
MacDonald approached L.P. and started talking to her. MacDonald asked L.P. to hug him, and she did so. After the hug, MacDonald grabbed L.P. and took her behind the school. L.P. told MacDonald "no" repeatedly. MacDonald pushed L.P. against the wall and tried to kiss her, but she kept resisting and saying "no." L.P. tried to push MacDonald away, but MacDonald managed to put his hand inside her pants and penetrate her with his finger. L.P. pushed MacDonald away and left to pick up her brother.
L.P. did not immediately report the incident. But at a surprise birthday party, she revealed the incident during a game of Truth or Dare. In April 2001, L.P.'s assistant principal, with whom L.P. had a close relationship, asked L.P. whether the Truth or Dare account was true; L.P. said that it was. The school notified police, and L.P. eventually told investigating detectives of the incident.
The jury convicted MacDonald of one count of first degree rape and one count of *1251 second degree rape.[1] The court sentenced MacDonald to serve a standard range sentence of 120 months. MacDonald appeals.
MacDonald's appeal presents numerous issues. Two require reversal of his convictions: (1) the State's failure to disclose exculpatory evidence material to L.P.'s credibility and (2) improper closing argument. But we address two additional issues concerning the trial court's disqualification of MacDonald's counsel of choice and the trial court's refusal to sever the counts for trial because these issues are likely to reoccur on remand.

ANALYSIS

DUTY TO DISCLOSE
MacDonald claims that the State failed to disclose material exculpatory impeaching information. The specific information concerns L.P. only and is outlined in a confidential letter from the trial court to this court. Having reviewed the letter, we agree that the State failed in its duty to disclose the information.
Due process requires the prosecution to disclose material evidence favorable to the accused which, if suppressed, would deprive the defendant of a fair trial. In re Personal Restraint of Rice, 118 Wash.2d 876, 887, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). The undisclosed evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability ... is a probability sufficient to undermine confidence in the outcome." State v. Benn, 120 Wash.2d 631, 649, 845 P.2d 289 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)), cert. denied, 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993), aff'd, 283 F.3d 1040 (2002). Material evidence may include evidence that is wholly impeaching if the result of the proceeding would have been different had the evidence been disclosed. Benn, 120 Wash.2d at 649-50, 845 P.2d 289.
There was no physical evidence that MacDonald raped L.P., only L.P.'s testimony. Thus, relevant material evidence impeaching L.P.'s credibility creates a reasonable probability that the outcome of the proceeding would have been different had the jury heard the information. Withholding relevant material impeachment evidence from the defense and the jury undermines confidence in the outcome of the trial and violates due process. Here, the State violated its constitutional duty to disclose to the defense relevant material evidence impeaching L.P.'s credibility and we reverse the jury's verdict on Count II and remand for retrial.

PROSECUTORIAL MISCONDUCT
MacDonald also contends that the State committed prosecutorial misconduct when it commented on MacDonald's failure to deny having raped C.T. when he took the stand to deny the allegation that he raped L.P. The State argues that MacDonald's testimony opened the door.
It is undisputed that the State cannot comment on a defendant's invocation of the right to remain silent as a suggestion to the jury of an admission of guilt. State v. Lewis, 130 Wash.2d 700, 707, 927 P.2d 235 (1996). Following a series of adverse rulings excluding evidence of his dog's age, MacDonald took the stand to testify for the limited purpose of establishing his dog's age. L.P. had testified to having seen the dog on the day of the alleged rape and whether the dog was an adult or a puppy at the time had become relevant to evaluating L.P.'s credibility and her ability to accurately perceive and recall the day's events.
During his testimony, MacDonald provided other details of his encounter with L.P., such as whether he had seen L.P. at the high school in September 1999, whether he encountered an unidentified individual in a red car at the school, and whether he encountered L.P. in a brown truck. By testifying, MacDonald waived his Fifth Amendment right to remain silent on the charge of raping *1252 L.P., Harris By and Through Ramseyer v. Blodgett, 853 F.Supp. 1239, 1282 (W.D.Wash.1994), aff'd, 64 F.3d 1432 (1995), and the State could have cross examined MacDonald on this testimony. State v. Jones, 26 Wash.App. 1, 8, 612 P.2d 404, review denied, 94 Wash.2d 1013 (1980) (a party may cross examine a witness within the scope of a direct examination). But MacDonald did not testify about the charges alleged in Count I of the information: that he raped C.T.
During closing argument, the prosecutor commented:
Now the Defendant took the stand, and I'll point this out again, two young women have come forward and said that they had been raped by Mr. MacDonald. He was given the opportunity to tell you about that, but he didn't do it. He didn't do that at all. You have to take the testimony that you've been given from the stand.
You know it's kind of odd that you wouldn't come forward and protest your innocence and explain your side. And that's something you can consider in reaching your decision as to who's telling you the truth.
6 Report of Proceedings (RP) at 951.
The State argues that this comment was proper under State v. Young, 89 Wash.2d 613, 574 P.2d 1171, cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978). Young held that a prosecutor may "argue the failure of the defendant to disclaim responsibility after he voluntarily waived his right to remain silent and when his questions and comments showed knowledge of the crime." 89 Wash.2d at 621, 574 P.2d 1171. But the State's reliance is wholly misplaced. First, the comment in Young referred to a defendant who waived the right to remain silent during an interrogation  not when testifying on his own behalf at trial. 89 Wash.2d at 621, 574 P.2d 1171; see also State v. Clark, 143 Wash.2d 731, 765, 24 P.3d 1006, cert. denied, 534 U.S. 1000, 122 S.Ct. 475, 151 L.Ed.2d 389 (2001). And second, MacDonald did not waive his right to remain silent on Count I.
By suggesting that MacDonald failed to deny both incidents when he denied raping L.P., the State commented on MacDonald's exercise of his right to remain silent as to Count I and invited the jury to use his exercise of this right in determining MacDonald's credibility.
The prosecutor's remarks denied MacDonald a fair trial on the first degree rape charge involving C.T. and Count I must also be reversed and remanded for a new trial.

CONFLICT OF INTEREST
MacDonald also challenges the trial court's disqualification of his chosen defense attorney, Robert Yoseph. The trial court found that Yoseph's representation of L.P.'s mother in a marital dissolution action created a conflict of interest requiring Yoseph to forego representing MacDonald. No interlocutory appeal was taken from this ruling, and Louis Byrd substituted for Yoseph before trial without further comment on the record. However, because MacDonald's appellate counsel indicated during oral argument that Yoseph intended to represent MacDonald in the event of a retrial, we address this issue.
The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." Wheat v. United States, 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); State v. Chase, 59 Wash.App. 501, 506, 799 P.2d 272 (1990). This provision includes both the right to retain an attorney of one's choice and also the right to be represented by an attorney who is "free from conflicts of interest." Wheat, 486 U.S. at 159, 108 S.Ct. 1692. See also Chase, 59 Wash.App. at 506, 799 P.2d 272. Although a trial court "must recognize a presumption in favor of petitioner's counsel of choice ..., that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Wheat, 486 U.S. at 164, 108 S.Ct. 1692. An actual conflict of interest exists when a defense attorney owes duties to a party whose interests are adverse to those of the defendant. State v. White, 80 Wash.App. 406, 411-12, 907 P.2d 310 (1995), review denied, 129 Wash.2d 1012, 917 P.2d 130 (1996).
*1253 A conflict of interest exists when the matters alleged to be in conflict are substantially related. State v. Hunsaker, 74 Wash.App. 38, 43-45, 873 P.2d 540 (1994). This "factual context" analysis is a three-prong inquiry:
First, the court reconstructs the scope of the facts involved in the former representation and projects the scope of the facts that will be involved in the second representation. Second, the court assumes that the lawyer obtained confidential client information about all facts within the scope of the former representation. Third, the court then determines whether any factual matter in the former representation is so similar to any material factual matter in the latter representation that a lawyer would consider it useful in advancing the interests of the client in the latter representation.
Hunsaker, 74 Wash.App. at 44, 873 P.2d 540 (quoting CHARLES W. WOLFRAM, Modern Legal Ethics § 7.4.3, at 370 (1986)).
Here, Yoseph attempted to represent a client accused of raping the daughter of one of his other clients. MacDonald argues that Yoseph has not worked on L.P.'s mother's case for more than one year, but Yoseph was still the attorney of record for L.P.'s mother when he agreed to represent MacDonald on the rape charges. Like the trial court, we believe that this presents a conflict of interest and requires Yoseph's disqualification.
On appeal, MacDonald's attorney claims that Yoseph never received any impeaching information from L.P.'s mother that he could use against L.P. Even if true, actual receipt of such information is not the standard for disqualification. Wheat, 486 U.S. at 164, 108 S.Ct. 1692.
Under the factual context test, we assume Yoseph received confidential information about L.P. in the course of his representing L.P.'s mother in the family law matter. Hunsaker, 74 Wash.App. at 44, 873 P.2d 540. Yoseph represented L.P.'s mother in a marital dissolution case. Numerous family issues, including personal issues related to the mother's relationship with L.P., were discussed during this representation. Some of this information was relevant to L.P.'s credibility and, potentially, her current rape accusation against MacDonald. There is no requirement that Yoseph actually receive information about L.P., only that the matters involved would have necessitated receiving information about L.P.[2]See Hunsaker, 74 Wash.App. at 47, 873 P.2d 540 (citing Teja v. Saran, 68 Wash.App. 793, 799, 846 P.2d 1375,review denied, 122 Wash.2d 1008, 859 P.2d 604 (1993)). Moreover, MacDonald is charged with having raped L.P. and L.P.'s testimony is the sole evidence against MacDonald and her credibility is determinative. Yoseph would cross examine L.P.'s mother, a former client, during the trial on the alleged rape of her daughter. The scope and nature of Yoseph's representation of L.P.'s mother created a conflict between her interests and MacDonald's. Yoseph may not represent MacDonald in this matter. RPC 1.9(a).

MOTION TO SEVER
Finally, we address MacDonald's contention that the trial court erred by denying his motion to sever the two charges for trial. MacDonald made his severance motion prior to trial, but he did not renew it during or at the close of trial. Under CrR 4.4(a)(2), a defendant who fails to renew a motion for severance before the end of trial waives the issue. State v. Bryant, 89 Wash.App. 857, 864, 950 P.2d 1004 (1998), review denied, 137 Wash.2d 1017, 978 P.2d 1100 (1999). Because the severance issue may arise on remand, however, we address it here.
CrR 4.3(a) permits two or more offenses of similar character to be joined in one trial. State v. Kalakosky, 121 Wash.2d 525, 537, 852 P.2d 1064 (1993). When considering whether different counts are properly joined for trial, we look to (1) the jury's ability to compartmentalize the evidence, (2) the strength of the State's evidence on each count, (3) the cross admissibility of evidence *1254 between the various counts, and (4) whether the trial court can successfully instruct the jury to decide each count separately. Kalakosky, 121 Wash.2d at 537, 852 P.2d 1064 (citing State v. Bythrow, 114 Wash.2d 713, 717-18, 790 P.2d 154 (1990)).
Here, none of the evidence in one case supports the other. Moreover, although the court properly instructed the jury to "decide each count separately" and that the "verdict on one count should not control your verdict on any other count" (Clerk's Papers (CP) at 168), when MacDonald elected to testify and deny that he raped L.P., the State argued that he had failed to also deny that he raped C.T. and thus merged the prosecution of the two entirely separate charges.
The strength of the State's evidence in L.P.'s case is weak and will become weaker with the necessary disclosure of the impeaching evidence. When one case is remarkably stronger than the other, severance is proper. State v. Russell, 125 Wash.2d 24, 63-64, 882 P.2d 747 (1994), cert. denied, 514 U.S. 1129, 115 S.Ct. 2004, 131 L.Ed.2d 1005 (1995). MacDonald should receive separate trials on these two charges.
We reverse MacDonald's convictions and remand for retrial. Each count must be tried separately and Yoseph may not represent MacDonald in a rape trial where L.P. and her mother are witnesses.
We concur: HOUGHTON and HUNT, JJ.
NOTES
[1] On April 9, 2002, the State charged MacDonald with first degree rape for the incident against C.T. and second degree rape for the incident against L.P. with an alternative for third degree rape.
[2] The trial court outlined details of the information L.P.'s mother disclosed in a sealed letter to this court.