IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RICHARD PLEIN, a married person, and DEBORAH PLEIN (formerly Deborah De Witt), a married person, and the marital community composed thereof,<br><br>Respondents,<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY, an insurance company,<br><br>Appellant,<br>and<br><br>THE STERLING GROUP, INC. (doing business as Sterling Group, DKI), a corporation,<br><br>Defendant. | No. 78190-1-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br><br><br><br><br><br><br>FILED: July 29, 2019 |

CHUN, J. — We address whether, given the facts of this case, a law firm may represent a person adverse to a former client. In doing so, we analyze whether this case constitutes a matter "substantially related" to the firm's representation of the former client under RPC 1.9(a). Comment 3 to RPC 1.9 guides our analysis.

On behalf of Richard and Debra Plein, attorney Joel Hanson filed a complaint for insurance bad faith and various other claims against USAA

Casualty Insurance Company. The claims stemmed from the actions of USAA and its recommended contractor for repairs following a house fire.

A few months later, attorneys William Smart and Ian Birk from the law firm Keller Rohrback LLP, joined the Pleins' legal team. USAA objected to Keller's participation in the litigation because the company and law firm had recently ended their extensive attorney-client relationship.

Keller requested the trial court rule on the asserted conflict of interest. The trial court found no conflict under RPC 1.9. USAA moved for discretionary review, which this court granted. We conclude Keller's representation of the Pleins violates RPC 1.9(a). Accordingly, we reverse.

## I. BACKGROUND

The Pleins purchased homeowners' insurance from USAA. Later, in August 2015, a fire damaged their home and personal property. USAA determined that the insurance policy covered the damage and recommended The Sterling Group, LLC as a contractor to perform repairs. The Pleins followed the recommendation.

The Pleins moved back into their home after Sterling finished the repairs. They claim to have noticed a substantial lingering odor of smoke upon their return. According to the Pleins, Sterling had concealed, rather than properly repaired, the fire damage. The Pleins hired a public adjuster and USAA hired an industrial hygienist. The industrial hygienist discovered numerous deficiencies in the repair work. The Pleins alleged that USAA agreed to move them to a rental

house to complete the repairs, but it did not investigate the cost of the needed repairs or offer payment for those repairs.

The Pleins claim that as of November 14, 2017, USAA had not made a coverage decision as to the additional repairs. That day, Mr. Hanson filed a complaint against USAA and Sterling[1] on behalf of the Pleins. In January 2018, Mr. Hanson approached William Smart, an attorney with Keller, about representing the Pleins in their lawsuit. That same month, Mr. Smart and another Keller attorney, Ian Birk, agreed to associate as counsel on the case.

A conflicts check at Keller revealed the firm's past relationship with USAA. Keller attorney Irene Hecht and at least seven additional attorneys at the firm represented USAA and its affiliates for over a decade. Between August 2006 and November 2017, Keller represented USAA and its affiliates in at least 165 cases, approximately 12 of which involved insurance bad faith litigation by homeowners. Keller served as USAA's primary law firm in Washington for bad faith litigation. In the last two years of its representation, Keller billed over 8,000 hours of work for USAA.

One of the cases in which Keller represented a USAA subsidiary in an insurance bad faith lawsuit involved issues very similar to the Pleins' case. Specifically, Cueva v. Garrison Prop. & Cas. Ins. Co., Pierce County Superior Court No. 10-2-06680-8, concerned an allegation of insurance bad faith relating to the handling of repairs after a house fire. The similarities between Cueva and the Pleins' case included smoke damage inadequately repaired by a

---

[1] Sterling is not party to this appeal.

recommended contractor, health concerns arising from the smoke damage, appropriate methods to clean the house and personal property, and "factual and legal disputes concerning the methodology for objectively testing for smoke damage."

The relationship between USAA and Keller ended in November 2017, the same month the Pleins filed suit. Keller's past work for USAA had not involved the Pleins. Additionally, the firm indicated that Mr. Smart and Mr. Birk had never been involved in Keller's relationship with USAA and did not have any knowledge of attorney-client communications with the company.

After learning of Keller's involvement in the Plein lawsuit, USAA contacted the firm to claim a conflict of interest and demand immediate withdrawal. Keller moved for a ruling on the asserted conflict of interest. In response, USAA requested disqualification of Mr. Smart, Mr. Birk, and Mr. Hanson. The trial court concluded "the Plein matter is factually distinct from and not substantially related to [Keller]'s prior representation of USAA, and as a result, the firm's representation of the Pleins is not a conflict under RPC 1.9." The trial court allowed the Keller attorneys and Mr. Hanson to remain as counsel for the Pleins.

USAA requested discretionary review of the trial court's ruling. A commissioner of this court granted discretionary review as to the representation by the Keller lawyers, but denied review as to Mr. Hanson, who remains as counsel for the Pleins. The Pleins moved to modify the commissioner's ruling. A panel of this court denied the motion.

## II. DISCUSSION

USAA contends Keller's participation in the case violates RPC 1.9(a). It argues that this case constitutes a matter substantially related to the firm's prior representation of the company. The Pleins argue the conflict of interest prohibition does not apply, and ask us to view their case as factually distinct from prior USAA cases handled by Keller. For the reasons discussed herein, we agree with USAA.

### A. Standard of Review

We review de novo "a court's decision to grant or deny a motion to disqualify counsel." Sanders v. Woods, 121 Wn. App. 593, 597, 89 P.3d 312 (2004).[2] Likewise, we review de novo a determination of whether an attorney has violated the RPC. Teja v. Saran, 68 Wn. App. 793, 796, 846 P.2d 1375 (1993); see State v. Hunsaker, 74 Wn. App. 38, 42, 873 P.2d 540 (1994).

### B. RPC 1.9(a) & RPC 1.10(a)

RPC 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(Emphasis added.)

---

[2] Washington courts have not established which party bears the burden of proof in connection with a motion to disqualify under RPC 1.9. Some federal courts applying Washington law have assigned the burden to the firm whose disqualification is sought. See, e.g., FMC Techs., Inc. v. Edwards, 420 F. Supp. 2d 1153, 1158 (W.D. Wash. 2006); Avocent Redmond Corp. v. Rose Elec., 491 F. Supp. 2d 1000, 1007 (W.D. Wash. 2007). Another concluded that the party seeking disqualification bears the burden of establishing the conflict of interest. Velazquez-Velez v. Molina-Rodriguez, 235 F. Supp. 3d 358, 361-62 (D.P.R. 2017). In this case, we would reach the same conclusion regardless of which party bears the burden.

Additionally, RPC 1.10(a) provides:

> [W]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Generally, this means, "[i]f an individual in a law firm is precluded by RPC 1.9 from representing a particular client, then all the members of the law firm are likewise prohibited from representing the client under RPC 1.10." Hunsaker, 74 Wn. App. at 41-42. Hence, in this case, if RPC 1.9(a) precludes Ms. Hecht (or any other Keller lawyer) from representing the Pleins, RPC 1.10(a) prohibits such representation by any lawyer at the firm.

C. Underlying Principles

Comment 2 to RPC 1.10 explains:

> The rule of imputed disqualification . . . gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.

RPC 1.9 incorporates both this duty of loyalty and the duty of confidentiality to former clients. See State v. White, 80 Wn. App. 406, 415, 907 P.2d 310 (1995).[3] These duties correlate to bedrock principles of the legal profession.[4] They

---

[3] This case discusses former RPC 1.9, which, for the purposes of this proposition, does not vary materially from the current rule.

[4] "[L]awyers are regarded as people who know how to keep secrets, as much as they are regarded as litigators . . . or drafters of contracts." In re Disciplinary Proceedings Against Schafer, 149 Wn.2d 148, 160, 66 P.3d 1036 (2003) (citing 1 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING § 9.2 (3d ed. 2002)). "This perception is founded on more than 300 years of the practice of confidentiality." Schafer, 149 Wn.2d at 160. "The attorney-client privilege is thought to derive from the original concept of an attorney's implicit oath of loyalty to

6

remain critical toward former clients because "the attorney may hold confidences of the former client that could be used, sometimes subtly, against the former client." In re Marriage of Wixom, 182 Wn. App. 881, 908-09, 332 P.3d 1063 (2014).[5] Furthermore, effective representation necessitates protection of the confidential relationship between an attorney and client. See In re Disciplinary Proceedings Against Schafer, 149 Wn.2d 148, 160, 66 P.3d 1036 (2003).[6]

The parties do not dispute the imputation effect of RPC 1.10(a). We thus focus our inquiry on the application of RPC 1.9(a).

D. "Substantially Related Matter"

RPC 1.9(a) prohibits USAA's former lawyers at Keller—and therefore the Keller firm under RPC 1.10(a)—from representing the Pleins on any matter "substantially related" to their former representation of the company.[7]

---

[their] client and is the oldest of the common law privileges." Schafer, 149 Wn.2d at 160 n.4 (citing 8 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2290 (John T. McNaughton ed., 4th rev. ed. 1961)).

[5] The United States Supreme Court observed almost 170 years ago:

There are few of the business relations of life involving a higher trust and confidence than that of attorney and client, or, generally speaking, one more honorably and faithfully discharged; few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit, and to be watchful and industrious, to see that confidence thus reposed shall not be used to the detriment or prejudice of the rights of the party bestowing it.

Stockton v. Ford, 52 U.S. 232, 247, 13 L. Ed. 676 (1850).

[6] As the United States Supreme Court noted over 130 years ago:

The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure.

Hunt v. Blackburn, 128 U.S. 464, 470, 9 S. Ct. 125, 127, 32 L. Ed. 488 (1888); cf. Schafer, 149 Wn.2d at 160-162 (discussing how the attorney-client privilege benefits society at large).

[7] For a discussion regarding the history and development of the substantial relationship test in the United States, see 1 GEOFFREY C. HAZARD, JR., W. WILLIAM HODES & PETER R. JARVIS, THE LAW OF LAWYERING §§ 14.07-14.10 (4th ed. 2015).

The Court of Appeals originally established the following process for determining whether matters are substantially related:

> [W]e must: (1) reconstruct the scope of the facts of the former representation; (2) assume the lawyer obtained confidential information from the client about all these facts; and (3) determine whether any former factual matter is sufficiently similar to a current one that the lawyer could use the confidential information to the client's detriment.

Sanders, 121 Wn. App. at 598; see also Hunsaker, 74 Wn. App. at 41-42; Teja, 68 Wn. App. at 796. It did so under the former version of RPC 1.9(a).[8]

Thereafter, in keeping with its inherent power to regulate the practice of law in Washington, see Chism v. Tri-State Constr. Inc., 193 Wn. App. 818, 838, 374 P.3d 193 (2016), our Supreme Court adopted the current version of RPC 1.9 along with associated comments in 2006. RPC 1.9 & cmts. 1-9 at 157 Wn.2d 1202-06 (2006). The RPCs' "Scope" provisions explain the role of the comments: Such comments "do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules." RPC Scope [14]. "The Comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. . . . The Comments are intended as guides to interpretation, but the text of each Rule is authoritative." RPC Scope [21].

---

[8] At the time, RPC 1.9 provided as follows:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or

(b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.

Comment 3 provides guidance on the meaning of "substantially related matter." However, it does not mention the prior standard for assessing substantially related matters as found in Sanders, Teja, or Hunsaker. Since adoption of the comments, no published Washington case has interpreted the comments to RPC 1.9 in order to address the definition of "substantially related matter."

For the following reasons, Comment 3, rather than the prior case law, guides our analysis of whether Keller's prior representation of USAA is substantially related to this case. First, the Court of Appeals decided those prior cases before 2006, in the absence of any similar comment. And second, the comments bear the imprimatur of the Washington Supreme Court, which adopted them and which exercises plenary authority over attorney discipline. Chism v. Tri-State Constr. Inc., 193 Wn. App. at 841.

Turning then to Comment 3, it provides, in pertinent part, a somewhat more stringent standard compared to the case law above:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute *or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.*

(Emphasis added.) Below, we apply this definition as well as other provisions of the comment and conclude that this case and the prior representation of USAA qualify as substantially related.[9]

---

[9] Even though Comment 3 clearly addresses the meaning of "substantially related," the Pleins point to Comment 2 to argue that their case is "factually distinct" from Keller's prior representation of USAA. The Pleins highlight Comment 2's statement that "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing

To illustrate, Comment 3 provides the example of a lawyer who learns "extensive private financial information" about a businessperson during representation and thus cannot subsequently represent the spouse in divorce proceedings. While the business and divorce proceedings are factually distinct, and do not involve the same transaction or legal dispute, there is a substantial risk that the attorney's knowledge of private financial information would materially advance the spouse's position in the divorce.[10]

USAA faces similar concerns as the businessperson described in Comment 3. While the specific facts of the Pleins' case may qualify as distinct, Keller learned significant confidential information about USAA's strategies for bad faith litigation. USAA provided a declaration about the scope of Keller's

---

another client in a *factually distinct* problem of that type even though the subsequent representation involves a position adverse to the prior client." RPC 1.9 cmt. 2 (emphasis added). But Comment 2 expressly focuses on the scope of the term "matter." Deciding whether matters qualify as factually distinct does not necessarily complete the RPC 1.9(a) analysis. We must still determine whether those matters are substantially related. To be sure, Comment 3 indicates that matters may be substantially related even if they do not involve "the same transaction or legal dispute."

[10] USAA's expert witness opines that this businessperson hypothetical constitutes an "example of the playbook problem." And he implies that Keller possesses knowledge of USAA's "playbook." No published Washington case has yet to expressly address the "playbook" concept. One treatise describes it as follows:

> Some courts and commentators . . . hold that the lawyer and [their] new client would have an improper advantage if the lawyer was permitted to make use of general tactical information and psychological insights, such as the former client's negotiating style, risk aversion, willingness to be deposed, and ability to handle the stress—including the financial stress—of litigation. . . . This method of defining substantial relationship between legal matters is commonly referred to, utilizing a sports metaphor, as the "playbook" rationale. . . . [A]lthough disqualification based on pure playbook concerns is unwarranted, courts have not infrequently taken a close look where playbook information blends into more specific factual information that could be put to adverse use. Thus, even where matters are factually distinct, disqualification is sometimes ordered where a lawyer represented a client in a series of matters that involve the same modus operandi and underlying factual base as the new matter.

1 HAZARD, JR., HODES & JARVIS, supra, § 14.10. We note the playbook rationale for informational purposes. To a certain extent, it overlaps with the concerns set forth in Comment 3, and it is a concept that non-Washington courts have discussed extensively.

representation during their professional relationship, which spanned over a decade. Keller does not dispute this description of the extent of its representation of USAA.

According to USAA, it trusted Keller attorneys "with direct access to confidential and proprietary business information of USAA CIC and its affiliated companies" including, confidential claims handling materials, thought processes of adjusters and in-house attorneys, business and litigation philosophies, and strategies such as "approaches to settlement discussions, motion practice, case analysis, defenses, witness meetings, witness preparation, trial preparation, and discovery both on a case-by-case and institutional, company-wide level." Keller served as one of the few law firms involved in insurance bad faith litigation on behalf of USAA in Washington, and had "intimate business and litigation knowledge." Keller provided USAA and its affiliates with advice including "insurance coverage matters, litigation strategies, factual positions, litigation mitigation recommendations for training and communication materials, and legal arguments."

Keller also participated in seminars as part of enterprise-wide strategic discussions where attorneys became privy to "proprietary information including litigation approach and strategies that has only been shared with a limited group of all of the law firms nationally representing USAA CIC and its affiliate companies in alleged bad faith litigation across the United States." And Keller attorneys had electronic login credentials to certain internal proprietary and confidential documents concerning insurance bad faith litigation, "including

11

document repositories holding attorney-client information and electronic claim databases."

Moreover, Keller gathered information on specific issues in order to defend USAA in Cueva. Keller provided advice on local expert witnesses in industrial hygiene and toxicology. Thus, USAA has shown a significant risk that Keller has knowledge of both specific and general confidential information that could materially advance the Pleins' case.

Additionally, the temporal proximity of the prior representation affects the analysis of risk to the former client. "Information acquired in a prior representation may have been rendered obsolete by the passage of time." RPC 1.9 cmt. 3. Here, Keller agreed to represent the Pleins within three months of the end of its relationship with USAA. This short time frame provides scant opportunity for obsolescence, particularly given the extent—in substance and duration—of the prior representation.

The Pleins contend that Keller had only general knowledge and information that would be disclosed during discovery. Comment 3 addresses the role of specific versus general information as well as information disclosed to third parties: "In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation," and, "Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying."

12

RPC 1.9 cmt. 3. The Pleins' argument, however, disregards the significant amount of confidential information on legal strategies and defenses developed between USAA and Keller. Moreover, the specific knowledge gained during defense of Cueva appears relevant to the issues in the Pleins' case. Therefore, Keller's knowledge of USAA's legal strategies goes beyond the permitted "general knowledge of the client's policies and practices." RPC 1.9 cmt. 3.

Keller points to the fact that USAA has not suggested any pattern or practice of intentionally acting in bad faith that would have been learned during representation. However, the Comments state, "A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." RPC 1.9 cmt. 3. As further noted by Comment 3, "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." The bad faith litigation defense conducted by Keller on behalf of USAA, particularly in Cueva, creates significant concern that Keller possesses specific confidential information that could unfairly aid the Pleins.

### III. CONCLUSION

In light of the foregoing, we determine that Keller's representation of the Pleins generates a substantial risk that USAA's confidential information would materially advance the Pleins' position in this case. We conclude there is a

conflict of interest under RPC 1.9(a). Mr. Smart, Mr. Birk, and their firm are disqualified from representing the Pleins in this matter.

Reversed.

_Chun, J._

WE CONCUR:

_Mann, A.C.J._