THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 21, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| RICHARD PLEIN, a married person, and DEBRA PLEIN (formerly Debra De Witt), a married person, and the marital community composed thereof,<br><br>        Petitioners,<br><br>    v.<br><br>USAA CASUALTY INSURANCE COMPANY, an insurance company,<br><br>        Respondent,<br><br>and<br><br>THE STERLING GROUP, INC. (doing business as Sterling Group, DKI), a corporation,<br><br>        Defendant. | No. 97563-9<br><br>EN BANC<br><br>Filed ___May 21, 2020___ |

GORDON McCLOUD, J.—Richard and Debra Plein sued USAA Casualty Insurance Company, alleging insurance bad faith. The Pleins hired three attorneys, two of whom were members of the Keller Rohrback LLP lawfirm (Keller), to represent them. But Keller had previously defended USAA in bad faith litigation for over 10 years.

Under the Rules of Professional Conduct, RPC 1.9(a) would bar Keller from representing the current clients, the Pleins, against former client USAA if the prior representation was in a matter "substantially related" to the current *Plein*[1] matter. We have never interpreted the meaning of this "substantially related" language under RPC 1.9(a). And since the last Court of Appeals decision interpreting this language, we amended the RPCs substantially and added two comments to guide our interpretation of RPC 1.9(a)'s "substantially related" language.

We now hold that under current RPC 1.9(a), USAA fails to show a "substantial risk" that Keller obtained "confidential factual information" that would "materially advance" the Pleins' case. RPC 1.9 cmt. 3. Accordingly, Keller did not represent former client USAA on any matter "substantially related" to the instant case. We therefore reverse the Court of Appeals decision that disqualification was required and reinstate the trial court's order that disqualification was not required.

FACTUAL AND PROCEDURAL HISTORY

I.   KELLER'S REPRESENTATION OF USAA

Irene Hecht and her team at Keller represented USAA between 2007 and 2017. Clerk's Papers (CP) at 29. According to Keller, that representation of USAA

---

[1] *Plein v. USAA Cas. Ins. Co. et al.*, King County Superior Court No. 17-2-29542-6 SEA.

in Washington included "over 165 matters between August 2006 and November 2017" and Keller had access to the following information:

a. The business customs and practices, including confidential claims handling materials and business relationships with outside companies and vendors;

b. The thought processes of adjusters, business representatives, and in-house attorneys; and

c. Business and litigation philosophies and strategies, including approaches to settlement discussions, motion practice, case analysis, defenses, witness meetings, witness preparation, trial preparation, and discovery both on a case-by-case and institutional, company-wide level.

CP at 99. Further, Keller acknowledges that during the course of its representation of USAA, Keller

a. Had regular in-person and telephonic access to company employees, executives, and in-house attorneys relative to insurance claims and related Alleged Bad Faith Litigation;

b. Provided USAA CIC and its affiliated companies with advice, including as to insurance coverage matters, litigation strategies, factual positions, litigation mitigation recommendations for training and communication materials, and legal arguments; and

c. Was provided with electronic login credentials to certain internal proprietary and confidential documents regarding insurance bad faith litigation, including document repositories holding attorney-client information and electronic claim databases; and

d. Actively participated in court appearances, depositions, written court filings, correspondence, and mediations on behalf of USAA CIC and its affiliated entities.

CP at 100-01. Keller acted as USAA's sole defense counsel against four bad faith

claims in Washington. CP at 100. USAA alleged that Keller "had (and has) extensive knowledge of how USAA CIC's adjusters analyze and handle homeowner's insurance claims and the interplay of this knowledge with the companies' litigation strategy and analysis in defending Alleged Bad Faith Litigation in Washington." CP at 103.

Finally, between 2010 and 2012, Keller defended a USAA subsidiary in a Pierce County matter (*Cueva*[2] matter) against allegations of "bad faith relating to the handling of the fire and smoke damage claim to their house." CP at 102. In the *Cueva* matter, the Cuevas alleged that USAA "failed to provide adequate alternative housing" during repairs to their home after a fire. CP at 119.

## II. *PLEIN* LAWSUIT

In 2016, a fire damaged the Pleins' home and personal property.[3] CP at 140. USAA agreed that the Pleins' homeowners' insurance policy covered the damage. *Id.* On USAA's recommendation, the Pleins hired The Sterling Group, Inc. to repair the damage. *Id.* But rather than repair the home, Sterling "concealed unrepaired fire damage." In addition, the work that Sterling did contained "numerous deficiencies." CP at 140-41. USAA nevertheless declined to pay the

---

[2] *Cueva v. Garrison Prop. & Cas. Ins. Co*., Pierce County Superior Court No. 10-2-06680-8.

[3] These facts are drawn from the allegations in the Pleins' first amended complaint.

Pleins for either the cost of additional repairs to their home or the cost of the temporary living arrangements while their home was uninhabitable. CP at 141.

The Pleins hired attorney Joel Hanson to represent them in a lawsuit against USAA and Sterling, alleging insurance bad faith, violation of the Consumer Protection Act (CPA), ch. 19.86 RCW, and several other claims. CP at 142-44. Soon after filing the lawsuit, Hanson consulted with two Keller attorneys, William Smart and Ian Birk.[4] CP at 8. The Pleins hired Smart and Birk to represent them along with Hanson. CP at 8-9.

USAA then demanded that Keller immediately withdraw from representing the Pleins due to a conflict of interest. CP at 60. USAA stated that it would move to disqualify if Keller did not comply within 24 hours. *Id.* USAA also stated that it would move to disqualify Hanson "on the grounds that his representation is likewise tainted by this direct conflict."[5] *Id.*

The Pleins moved for a ruling regarding the "asserted conflict of interest." CP at 13. The trial court considered briefing and unrebutted declarations and then issued an order concluding that "the *Plein* matter is factually distinct from and not

---

[4] Birk continues to appear as a counsel of record before this court. Smart filed a notice of withdrawal on January 9, 2020.

[5] When the Court of Appeals accepted interlocutory review, it declined review as to Hanson. Only the issue of Keller's representation of the Pleins remains before this court.

substantially related to the firm's prior representation of USAA, and as a result, the firm's representation of the Pleins is not a conflict under RPC 1.9." CP at 129. Accordingly, the trial court allowed Keller to continue to represent the Pleins. CP at 130.

USAA moved for discretionary review of this conflict issue. The Court of Appeals granted review and reversed. *Plein v. USAA Cas. Ins. Co.*, 9 Wn. App. 2d 407, 445 P.3d 574 (2019). After acknowledging its previous test for "substantially related" matters under RPC 1.9, the appellate court recognized that RPC 1.9 and its comments had been amended in 2006. *Id.* at 415-16. Since those 2006 changes, "no published Washington case ha[d] interpreted the comments to RPC 1.9 in order to address the definition of 'substantially related matter.'" *Id.* at 416. Relying largely on comment 3 to RPC 1.9, the Court of Appeals noted that "[w]hile the specific fact of the Pleins' case may qualify as distinct, Keller learned significant confidential information about USAA's strategies for bad faith litigation." *Id.* at 418. Because USAA showed "a significant risk that Keller ha[d] knowledge of both specific and general confidential information that could materially advance the Pleins' case," it held that RPC 1.9(a) precluded Keller's representation of the Pleins. *Id.* at 419.

We granted review, 194 Wn.2d 1009 (2019), and now reverse.

ANALYSIS

RPC 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same *or a substantially related matter* in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(Emphasis added.) The parties agree that Keller formerly represented USAA and that it now seeks to represent the Pleins,[6] whose interests are materially adverse to the interests of USAA. The parties also agree that USAA does not consent to this representation. Thus, the question presented is whether the Plein matter is "substantially related" to any matter on which Keller previously represented USAA.

The Court of Appeals has applied RPC 1.9(a)'s "substantially related" language many times over the years.[7] We have not. And, as the Court of Appeals

---

[6] While the Pleins have not hired Hecht herself, the ethical rules extend her conflict to all Keller firm members. RPC 1.10(a) ("[W]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9."). The Pleins argue, in a single paragraph, that the Court of Appeals erred by relying on this imputation of conflicts rule. Pleins' Suppl. Br. at 21 & n.20. But they acknowledge that the screening rules they cite do not apply to attorneys who remain at the same firm with the allegedly conflicted attorney. *Id.* The Pleins suggest no reading of RPC 1.10 that would not impute Hecht's conflict to Birk.

[7] *See, e.g.*, *State v. Hunsaker*, 74 Wn. App. 38, 43-45, 873 P.2d 540 (1994) (comparing the "majority rule" "factual context" test with the Second Circuit Court of Appeals' "patently clear" test and choosing to apply the "factual context" test) (citing *State v. Stenger*, 111 Wn.2d 516, 760 P.2d 357 (1988)); *Sanders v. Woods*, 121 Wn. App. 593, 598, 89 P.3d 312 (2004) (restating and applying *Hunsaker*'s three-part "factual context" test).

recognized, we amended the RPCs and their comments substantially in 2006. RPC Table of Rules, 157 Wn.2d 1135 (2006); *see Wallace v. Evans*, 131 Wn.2d 572, 577, 934 P.2d 662 (1997) (old cases may be "superseded by a significant change in the rule they interpret"). For purposes of this case, our amendments to RPC 1.9 effectively adopted the American Bar Association's *Model Rules of Professional Conduct* (ABA Model Rule) and their comments.

## I. WE REVIEW INTERPRETATION OF A COURT RULE DE NOVO

"Whether attorney conduct violates the relevant RPCs is a question of law, which we review de novo." *State v. Nickels*, 195 Wn.2d 132, 136, 456 P.3d 795 (2020) (citing *Eriks v. Denver*, 118 Wn.2d 451, 457-58, 824 P.2d 1207 (1992)).[8] "When interpreting court rules, the court approaches the rules as though they had been drafted by the Legislature" and "appl[ies] principles of statutory construction."

---

[8] Many out-of-jurisdiction decisions review orders on motions to disqualify counsel for an abuse of discretion. *See, e.g.*, *Watkins v. Trans Union, LLC*, 869 F.3d 514, 518 (7th Cir. 2017); *Zerger & Mauer LLP v. City of Greenwood*, 751 F.3d 928, 931 (8th Cir. 2014). We have also reviewed orders disqualifying counsel for an abuse of discretion. *Public Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 812, 881 P.2d 1020 (1994) (finding "no abuse of discretion" in trial court's denial of disqualification motion). But if the Keller attorneys are conflicted in this case, the trial court had no choice but to disqualify them. RPC 1.9(a). And we review whether attorney conduct violates the RPCs de novo. *Eriks*, 118 Wn.2d at 457-58; *see also In re Firestorm 1991*, 129 Wn.2d 130, 135, 916 P.2d 411 (1996) ("Since this case involves the application of a court rule to a set of particular facts, this is a question of law, and will be reviewed de novo on appeal." (citing *State v. Tatum*, 74 Wn. App. 81, 86, 871 P.2d 1123 (1994))).

*State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993) (citing *State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979)).

II. THE FORMER CLIENT BEARS THE BURDEN OF SHOWING A "SUBSTANTIAL RELATIONSHIP"

The Court of Appeals observed in a footnote that "Washington courts have not established which party bears the burden of proof in connection with a motion to disqualify under RPC 1.9." *Plein*, 9 Wn. App. 2d at 412 n.2. It cited federal cases on both sides and then declined to resolve the issue because it "would reach the same conclusion regardless of which party bears the burden."[9] We now hold that the burden falls on the former client who seeks to disqualify an adverse party's lawyer.

"[B]oth federal and state courts generally agree that the burden of proving substantial relationship should ordinarily be placed on the former client." RICHARD E. FLAMM, LAWYER DISQUALIFICATION: CONFLICTS OF INTEREST AND OTHER BASES § 8.5 at 150-53 (2003) (footnotes omitted); *see, e.g.*, *Richers v. Marsh & McLennan Grp. Assocs.*, 459 N.W.2d 478, 481 (Iowa 1990) ("The movant has the burden of proving that the two representations are substantially related."); *Robbins v. Gillock*, 109 Nev. 1015, 1017-18, 862 P.2d 1195 (1993) (per curiam) ("The burden of

---

[9] *Plein*, 9 Wn. App. 2d at 412 n.2 (citing *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1158 (W.D. Wash. 2006); *Avocent Redmond Corp. v. Rose Elecs.*, 491 F. Supp. 2d 1000, 1007 (W.D. Wash. 2007); *Velazquez-Velez v. Molina- Rodriguez*, 235 F. Supp. 3d 358, 361-62 (D.P.R. 2017)).

proving whether two matters are the same or substantially related falls on the party moving for disqualification and that party must have evidence to buttress the claim that a conflict exists."); *State ex rel. Ogden Newspapers, Inc. v. Wilkes*, 211 W.Va. 423, 426, 566 S.E.2d 560 (2002) (per curiam) ("[T]he burden of establishing that a substantially related matter exists is on the former client."); *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989) ("A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements . . . ."); *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 728 (11th Cir. 1988) ("[T]he movant must "'show that the matters embraced within the pending suit are *substantially related* to the matters or cause of action wherein the attorney previously represented [it].'"" (alteration in original) (quoting *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981) (quoting *Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 252 (5th Cir. 1977)))).

Under the previous version of the rules, our Court of Appeals also placed the burden on the party moving to disqualify counsel. *Sanders v. Woods*, 121 Wn. App. 593, 597-98, 89 P.3d 312 (2004) ("In order to successfully disqualify a lawyer from representing an adversary, a former client must show that the matters currently

at issue are substantially related to the subject matter of the former representation." (citing RPC 1.9; *State v. Hunsaker*, 74 Wn. App. 38, 43, 873 P.2d 540 (1994))).

The two federal district court cases cited by USAA holding to the contrary both misinterpreted a comment to ABA Model Rule 1.9. Suppl. Br. of Resp't at 7-8 (citing *FMC Techs., Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1157-58 (W.D. Wash. 2006); *Amgen, Inc. v. Elanex Pharm., Inc.*, 160 F.R.D. 134, 139-40 (W.D. Wash. 1994)). Both of these cases cited ABA Model Rule 1.9 comment 8 (now comment 6—in both the ABA Model Rules and the RPCs), which does place the burden of proof "upon the firm whose disqualification is sought." But that comment applies to a different context, not to determining whether matters are "substantially related." *FMC Techs*, 420 F. Supp. 2d at 1158; *Amgen*, 160 F.R.D. at 139; *see* RPC 1.9 cmt. 6.

We join the majority of jurisdictions that place the burden of showing that matters are substantially related on the former client.

III. KELLER DID NOT REPRESENT USAA ON THE SAME OR A SUBSTANTIALLY RELATED MATTER

As stated above, RPC 1.9(a) provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

11

> *A. Before the 2006 Amendments, the Court of Appeals Used a Three-Part "Factual Context" Test To Decide Whether Matters Were "Substantially Related"*

Even before the 2006 rule changes, we had not ruled on the meaning of a "substantially related matter" under RPC 1.9. The Court of Appeals, however, had established a "factual context" test that looked to three factors:

> To determine whether the two representations are substantially related, we must: (1) reconstruct the scope of the facts of the former representation, (2) assume the lawyer obtained confidential information from the client about all these facts, and (3) determine whether any former factual matter is *sufficiently similar* to a current one that the lawyer could use the *confidential information* to the client's detriment.

*Sanders*, 121 Wn. App. at 598 (emphasis added) (citing *Hunsaker*, 74 Wn. App. at 44).

The Court of Appeals in this case, however, disavowed that factual context test. *Plein*, 9 Wn. App. 2d at 415-16. It reasoned that comment 3 to RPC 1.9, adopted in 2006, "does not mention the prior standard for assessing substantially related matters as found in *Sanders*, *Teja*,[10] or *Hunsaker*," so it declined to apply

---

[10] *Teja v. Saran*, 68 Wn. App. 793, 846 P.2d 1375 (1993) (matters substantially related where attorney consulted with the former client about the exact matter ultimately leading to the dispute).

that test going forward. *Id.* at 416; *see Wallace*, 131 Wn.2d at 577 (changes to a court rule made it unnecessary to overrule a case decided before the changes).

> B. *The 2006 Amendments to RPC 1.9 and Its Comments Now Determine Whether Matters Are "Substantially Related"*

In 2006, we amended RPC 1.9 and added numerous comments. Adoption of Rule 1.9, 157 Wn.2d at 1202. The parties agree that this rule and these comments now guide our analysis, but they emphasize different comments.

The Pleins highlight comment 2, which states that the "scope of a 'matter' . . . depends on the facts of a particular situation or transaction." RPC 1.9 cmt. 2. Pursuant to comment 2, "'a lawyer who recurrently handled a type of problem for a former client is *not* precluded from later representing another client in a *factually distinct* problem of that type even though the subsequent representation involves a position adverse to the prior client.'"[11] Pleins' Suppl. Br. at 14 (emphasis added) (quoting RPC 1.9 cmt. 2).

The Court of Appeals emphasized that this comment concerned only what constitutes the scope of a single "matter" and does not help understand whether

---

[11] This was a change. Before 2002, comment 2 to the ABA Model Rule had allowed representation only in "a *wholly distinct* problem of that type." ART GARWIN, A LEGISLATIVE HISTORY: THE DEVELOPMENT OF THE ABA MODEL RULES OF PROFESSIONAL CONDUCT, 1982-2013, at 239 (2013) (emphasis added). But 2002 amendments changed the word "wholly" to "factually" in order to "further refine and cabin the concept of substantial relationship, particularly as it affects the potential disqualification of former lawyers for an organization." *Id.* at 239, 242.

distinct matters are "substantially related." *Plein*, 9 Wn. App. 2d at 417 n.9. But comment 2 anticipates the exact situation presented by this case: a lawyer representing a current client against a former organizational client on a "factually distinct problem" of the same type as the prior representation. And it allows such representation of the current client, despite objection by the former client.  Under this comment 2, Keller's representation of the Pleins is clearly permissible.

USAA, in contrast, focuses on comment 3, which states that matters may be "substantially related" "if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." RPC 1.9 cmt. 3. USAA does not claim that Keller represented it in the same "transaction or legal dispute" as the one at issue in this case. *Id.* The key inquiry, therefore, is whether there is a "substantial risk" that Keller acquired "confidential factual information as would normally have been obtained in the prior representation" that "would materially advance" the Pleins' position. *Id.*

Under this rule and these comments, the former client need not show that the lawyer actually *obtained* confidential information—the "former client is not required to reveal the confidential information learned by the lawyer in order to

establish a substantial risk that the lawyer has confidential information to use in the subsequent matter." *Id.* Rather, a "conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id.*

Comment 3 provides several examples of information gained from a former representation that poses such a risk and hence creates a conflict. A lawyer who learned "extensive private financial information" about a client may not represent the client's spouse in a divorce. *Id.* Nor may a lawyer help a client secure environmental permits, then represent another client seeking to rezone the same plat of property for environmental reasons. *Id.* But comment 3 also lists several types of information gained from a former client's representation that will not create a conflict. These include "general knowledge of [an organizational] client's policies and practices," "[i]nformation that has been disclosed to the public or to other parties adverse to the former client," and information "rendered obsolete by the passage of time." *Id.* However, even as to organizational clients, "knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation." *Id.*

Whether the "substantially related" test bars Keller's current representation of the Pleins under this comment is a more difficult question. The answer depends on just how related the former and current representation must be to meet comment 3's "substantially related" test.

### C. The Decisions Holding That "Substantially Related" Matters Must Be Factually Related Are More Persuasive

Several federal appellate courts have considered whether former and current representations that are comparable to the former and current representations here presented "substantially related" matters. Most of those decisions would have us ask whether the two matters are factually related and, hence, most of those decisions would not require disqualification in this case.[12]

Most recently, the Seventh Circuit interpreted Indiana RPC 1.9, which is identical to the ABA Model Rule and to Washington RPC 1.9. *Watkins v. Trans Union, LLC*, 869 F.3d 514 (7th Cir. 2017). In *Watkins*, a lawyer defended Trans Union in approximately 250 Fair Credit Reporting Act[13] (FCRA) cases over five years, billing over 4,000 hours. *Id.* at 516-17. Twelve years later, the lawyer sought to represent an FCRA plaintiff against Trans Union. *Id.* By that time, the lawyer

---

[12] Federal Courts have applied many distinct tests to determine whether matters are "substantially related" under RPC 1.9. *See* LAWYER DISQUALIFICATION, *supra*, §§ 9.1-9.9 at 169-88 (2003) (describing distinct tests applied by five different federal circuits).

[13] 15 U.S.C. § 1681.

had left his previous firm, which continued to represent Trans Union. *Id.* at 517. The trial court denied Trans Union's motion to disqualify the lawyer, finding that the "prior representations [were] not factually related such that the same matter [was] in dispute," nor was "there a risk that confidential information from the prior matters would materially advance Watkins' present claims." *Id.* at 518.

The Seventh Circuit affirmed. *Id.* It held that even though the former and current representations "both involve[d] FCRA violations," they did "not turn on the same facts of one 'particular situation or transaction.'" *Id.* at 521. The court categorized the knowledge that the lawyer gained while working for Trans Union into three groups: (1) general knowledge experience working with the FCRA, (2) knowledge of Trans Union "policies and practices" that would be discoverable to an opposing FCRA litigant, and (3) "general knowledge" of Trans Union policies and practices. *Id.* at 522. To the extent the lawyer learned "truly confidential information," the passage of time made it obsolete based on 10 years of development in technology and the law. *Id.* at 522-23. This decision is based on the factual relationship—or lack thereof—between the subject matter of the former representation and the subject matter of the current representation. It holds that the matters are not substantially related where, as in the instant case, the facts forming the basis for each claim are completely different.

17

In another similar case, albeit one decided long before the ABA added comments 2 and 3 to the rules, the Fifth Circuit applied a similar test and also found no conflict. *Duncan*, 646 F.2d 1020. In *Duncan*, a law firm represented investment firm Merrill Lynch in complex litigation, including securities-related cases, over a 10-year period. *Id.* at 1022. The same firm then represented a client who sued Merrill Lynch for securities fraud—an action of the same type as the prior representation. *Id.* The district court held that "'[a]lthough the previous cases may not involve the identical issues involved here, the court feels that [the law firm] would certainly have been exposed to information which would be substantially related to the instant case'" and disqualified the firm. *Id.* at 1024 (first alteration in original).

The Fifth Circuit reversed. *Id.* at 1033. It acknowledged that Merrill Lynch had shown that the law firm represented it in similar *types* of cases. *Id.* at 1028. But it noted that Merrill Lynch "said nothing about the specific nature" of those cases. Instead, Merrill Lynch "stated generally that these matters involved various kinds of securities, margin accounts, Merrill Lynch's relationship with its customers and employees, and the federal and state securities laws." *Id.* at 1028-29. The court held that a "catalogue of such generalities offers little assistance to a court attempting to ferret out the degree of similarity, if any, between the former

representation and the pending case." *Id.* at 1029. The list of similarities Merrill Lynch offered "could be applied to virtually any law firm that had ever represented Merrill Lynch or any large brokerage firm." *Id.*

In fact, Merrill Lynch, like USAA in this case, identified two specific cases where the former representation involved issues "'remarkably similar' to those presented" in the current client's case. *Id.* at 1022-23. But even as to those specific cases, Merrill Lynch "described only a general, superficial connection between the subject matters of these cases and that of Duncan's suit." *Id.* at 1030.

*Duncan*, like *Watkins*, clearly focuses on the factual relationship—or lack thereof—between the subject matter of the former representation and the subject matter of the current representation. Under that approach, the information USAA alleges Keller obtained is very similar to the information obtained by the firm in *Duncan*. USAA's "business customs and practices, including confidential claims handling materials and business relationships, . . . the thought processes of adjusters, business representatives, and in-house attorneys, . . . and [USAA's] [b]usiness and litigation philosophies and strategies," are exactly the kind of "general knowledge" that *Duncan* held was *not* disqualifying. CP at 99. And comment 3 specifically states that "general knowledge of [an organizational]

client's policies and practices ordinarily will not preclude a subsequent representation." RPC 1.9 cmt. 3.

To be sure, USAA does allege that Keller obtained specific information relevant to the facts of the instant case during its representation of USAA in the *Cueva* matter. That matter involved allegations similar to those made by the Pleins. But USAA's response to an unrelated set of facts, even facts based on similar allegations, does not suggest that Keller obtained confidential information that would materially advance the Pleins' case. Indeed, comment 2 specifically allows a lawyer to represent a current client in a "factually distinct problem" of the same type that it "recurrently handled" for the former client. RPC 1.9 cmt. 2.

In contrast, in *Government of India v. Cook Industries, Inc.*, the Second Circuit applied a stricter test but found that plaintiffs satisfied that test and hence affirmed an order of disqualification. 569 F.2d 737, 739-40 (2d Cir. 1978). In that case, a lawyer represented defendant Cook Industries on two closely related cases against allegations that it had come up short on soybean deliveries. *Id.* at 738. The lawyer worked on these *Cook Industries* cases for three years and billed over 100 hours. *Id.* at 739. He then represented a new client—a plaintiff who alleged that Cook Industries came up short on a grain delivery. *Id.* All three cases involved allegations of fraudulent documentation. *Id.* Because the attorney had "conduct[ed]

20

confidential inquiries as to [the former client's] loading procedures," and the "very same information necessarily was the cornerstone" of the allegations in the new case, the Second Circuit affirmed the trial court's order of disqualification. *Id.* Despite requiring a showing that the relationship between the two cases was "patently clear," the court stated that "[i]t would be difficult to think of a closer nexus between issues." *Id.* at 739-40.

But *Cook Industries* was decided long before the ABA added comments 2 and 3 to the rule. The addition of those two comments demonstrates an intent to limit disqualification under RPC 1.9(a). Both comments emphasize that the disqualifying confidential information must be "factual." RPC 1.9 cmt. 2 (allowing representation in "*factually* distinct" problem of type lawyer handled for former client (emphasis added)), cmt. 3 (matters substantially related where there is "a substantial risk that confidential *factual* information" would materially advance new client's position (emphasis added)).

The current RPC 1.9 and its associated comments thus tell us to decide whether the former and current representation are factually related. If not, then they are not "substantially related" within the meaning of the rule. Keller did not represent USAA on the Plein matter or on anything factually related to the Plein matter. As a result, it did not represent USAA on any matter substantially related to

the instant case, so it may now represent the Pleins.

   *D. Neither the "Playbook" Nor "Duty of Loyalty" Approaches to Conflicts
      of Interest Apply in Washington*

Two other potential interpretations of RPC 1.9(a) would preclude Keller's representation of the Pleins: the "playbook" approach and the duty of loyalty. We reject both of these approaches as inconsistent with RPC 1.9 and its comments.

   1.  "Playbook" Approach

Some courts have taken a "playbook" approach to disqualification. In *Chugach Electric Ass'n v. United States Dist. Court for District of Alaska*, 370 F.2d 441, 442 (9th Cir. 1966), an attorney brought an antitrust action against a corporation where he had previously served as general counsel.  Despite no showing that the lawyer "'had access to secret or confidential information related to the issues'" in the case, the Ninth Circuit disqualified him. *Id.* at 443. It did so because the lawyer's general representation of the corporation could "provide him with greater insight and understanding of the significance of subsequent events in an antitrust context and offer a promising source of discovery." *Id.*

That was 1966. Since that time, the model rules have changed. The RPC and ABA Model Rule comments now flatly reject this "playbook" approach to disqualification motions.  RPC 1.9 cmt. 2 ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another

22

client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."), cmt. 3 (allowing representation despite "general knowledge of the [organizational] client's policies and practices").

### 2. "Duty of Loyalty" Approach

USAA also contends that Keller breached the "duty of loyalty" it owed to USAA. Suppl. Br. of Resp't at 5-6. But there is no separate "duty of loyalty" under RPC 1.9 beyond the test outlined in RPC 1.9. If Keller's representation of the Pleins violates RPC 1.9(a), it breaches the duty of loyalty. If there were a general duty of loyalty to never litigate against a former client, courts would not need to apply RPC 1.9(a) at all and would not need to assess whether matters are substantially related; disqualification would be automatic any time a lawyer sought to represent a party adverse to a former client. This is clearly not what the RPCs say.

*E. RPC 1.9(c) Provides Additional Protection for Client Confidences*

The Pleins acknowledge that RPC 1.9(c) bars Keller from using USAA's confidences against it. They argue that RPC 1.9(c) imposes this bar without requiring disqualification. Pleins' Suppl. Br. at 22. We agree.

RPC 1.9(c) provides:

A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall

not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

*The Restatement (Third) of the Law Governing Lawyers* interprets this rule to mean that "[e]ven if a subsequent representation does not involve the same or a substantially related matter, a lawyer may not disclose or use confidential information of a former client." 2 RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 132 cmt. f (AM. LAW INST. 2000).

The ABA similarly states that this rule "prohibits the use of a former client's protected information (unless it is generally known) as well as its disclosure, even if the lawyer is not adverse to the former client or the adversity is in a matter which is not substantially related to the prior representation." ABA Formal Op. 99-415 (1999).

Notably, RPC 1.10(a)'s imputation of conflicts applies differently to RPC 1.9(c) than to RPC 1.9(a). RPC 1.9(a) specifically forbids representation of the current client where matters are substantially related. But RPC 1.9(c) forbids only use of confidential information against a former client. It does not forbid representation entirely. RPC 1.10(a) imputes conflicts across a firm when any

24

lawyer in the firm "would be *prohibited* from [representing a client] by Rules 1.7 or 1.9." Because RPC 1.9(c) does not prohibit representation, confidential client information Hecht may have obtained about USAA that is *not* substantially related to the *Plein* matter is *not* imputed to Smart or Birk through RPC 1.10(a). Rather, RPC 1.9(c) would forbid Hecht herself from using any *unrelated* confidences she obtained in her representation of USAA against USAA. Neither Smart nor Birk possess any such confidences. Therefore, RPC 1.9(c) does not limit Smart's or Birk's representation of the Pleins.

CONCLUSION

Keller represented USAA for many years, and the parties agree that it obtained information about the company's procedures and general strategies. But it never represented USAA on any matter substantially related to the *Plein* matter. Thus, RPC 1.9(a) does not prohibit Keller from representing the Pleins against USAA.

We reverse the Court of Appeals and remand for further proceedings consistent with this opinion.

No. 97563-9

_____
Gordon McCloud, J.

WE CONCUR:

_____
Stephens, C.J.

_____
González, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.

_____
Owens, J.

_____
Wiggins, J.P.T.

26